UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH POPE,<br><br>            Plaintiff,<br><br>    v.<br><br>J. BLAUSER,<br><br>            Defendant. | No. 2:13-cv-1896 KJM DB P<br><br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with an action for alleged violations of his civil rights, pursuant to 42 U.S.C. § 1983. This matter proceeds on plaintiff's first amended complaint ("FAC") against defendant J. Blauser on an Eighth Amendment excessive force claim. Pending now is defendant's November 19, 2015, motion for summary judgment. Plaintiff opposes the motion. This matter is fully briefed and ready for disposition.

**I.    Relevant Procedural History**

Plaintiff initiated this action on September 12, 2013, and is proceeding on a FAC against defendant Blauser on an Eighth Amendment excessive force claim. (ECF Nos. 1, 14, 15.)

Defendant filed an answer on March 25, 2015, and a discovery and scheduling order ("DSO") issued on March 31, 2015. (ECF Nos. 19, 22.) An amended DSO issued on September 4, 2015, setting the discovery deadline for December 15, 2015, and the dispositive motion deadline for March 15, 2016. (ECF No. 32.)

1

| | |
|---|---|
| 1 | Defendant filed the instant motion for summary judgment on November 19, 2015. (ECF |
| 2 | No. 38.) Plaintiff has filed an opposition (ECF No. 42), and defendant has filed a reply (ECF No. |
| 3 | 43). |

**II. Allegations in First Amended Complaint**

Plaintiff's allegations against defendant are included here in their entirety:

> On September 4, 2012, the Eighth Amendment rights of the plaintiff were violated by [defendant at High Desert State Prison ("HDSP")], by placing plaintiff and numerous other inmates in restraints (handcuffed behind their backs) for more than 4 hours while the[y] conduct a search of living quarters causing discomfort in the shoulder and back area and not allowed to use the restroom with restraints removed or not allowed to use the restroom at all and furthermore violated by keeping the water off in the cells before the search a [sic] hour before and an hour after.

FAC, ECF No. 14, at 3.

**III. Facts**

Defendant's statement of undisputed facts is supported by citations to the FAC; defendant's declaration; the declaration of C. Amrein, the litigation coordinator at High Desert State Prison ("HDSP") in Susanville, California; plaintiff's responses to defendant's special interrogatories; the transcript of plaintiff's deposition taken July 10, 2015; and the California Code of Regulations. See Def.'s Statement Undisputed Facts ("SUF"), ECF No. 38-3. The court will refer to the SUF in the absence of a specific factual dispute.

Defendant's evidence demonstrates that, at all times relevant to this action, plaintiff was an inmate housed in Building A-2 at HDSP, and defendant was an HDSP correctional officer assigned as the Building A-2 floor officer. SUF ¶¶ 1-2, 10.

**A. The August 2012 Suspended / Modified Program at HDSP**

In or around August 2012, HDSP was experiencing a period of high prison violence, including gang riots. SUF ¶¶ 3-4. As a result, HDSP Facilities A through D were placed on a suspended / modified program in order to conduct an investigation into possible staff threats and missing metal. Id. This program modification was necessary due to the seriousness of the violence at the time. Id. ¶ 5. Defendant contends that "[c]ell and property inspections are necessary in order to detect and control serious contraband and to maintain institution security.

Such inspections will not be used as a punitive measure nor to harass an inmate." 15 Cal. Code Reg. § 3287(a)(2). Id. ¶ 7.

Plaintiff claims that the cell searches underlying this action were harassing since the threat referenced by defendant arose from specific groups of inmates, not all of them. See Pl.'s Resp. to Def.'s SUF ("Pl.'s Resp."), ECF No. 42, at 2.

**B. HDSP Search Protocol**

Facility searches generally include an unclothed body search on each inmate before he is escorted from the building. SUF ¶ 12. Once an inmate has fully disrobed and the search conducted, he is allowed to put on his state-issued boxers, T-shirts, socks, and shoes. Id.

Handcuffs are placed on prisoners during facility-wide searches for items that can be used as weapons, particularly when threats have been made against staff. SUF ¶ 14. Inmates are to remain handcuffed during the search and are not allowed to use the restroom uncuffed. Id. ¶ 21. The clothing they are authorized to wear allows them to easily remove their boxers to use the restroom facilities. Id. ¶ 12. This was done to ensure staff and inmate safety. Id.

**C. The September 2012 Search of Facility A**

On September 4, 2012, a search of Building A-2 was conducted. SUF ¶ 8. The search ended around 1:30 p.m., lasting approximately four hours. Id. ¶ 30.

As a floor officer on Building A-2, defendant's role in the searches was filling out cell search receipts, preparing documentation regarding any discrepancies for the cell searches, and ensuring the cleanliness of the building and cells post-searches. SUF ¶ 11.

**1. Pre-Search Activity**

The inmates underwent a body search before they were taken to the Dining Hall. See SUF ¶ 12. Defendant did not participate in the body searches. Id. All inmates were handcuffed before their escort to the Dining Hall. SUF ¶ 13. Defendant did not handcuff plaintiff. Id. All inmates remained handcuffed during their escort to the Dining Hall. SUF ¶ 13. Defendant denies that she escorted plaintiff to the Dining Hall, id. ¶ 16, but plaintiff claims that she did. Pl.'s Dep., ECF No. 42, at 19:20-21.

////

### 2. The Search

#### a. Discomfort Caused by Handcuffs

Defendant was unaware at any time during the searches that any inmates claimed to be in discomfort as a result of the handcuffs. SUF ¶¶ 17-18. She claims that she did not watch over the inmates in the Dining Hall and was not present in the Dining Hall during the search of Building A-2. Id. ¶ 13.

Plaintiff counters that defendant was present in the Dining Hall since she walked documents over for the inmates to sign. See Pl.'s Resp. at 2. During his deposition, though, plaintiff presents conflicting testimony as to whether he in fact saw defendant. At one point, he stated that he did not see her because he was located in the back of the Dining Hall. See Pl.'s Dep. at 20:14-16. He then testified that he saw her "out there" (that is, near the entrance of the Dining Hall) "for a second" or possibly "for a few minutes," but "[s]he wasn't in there that long." Id. at 21:21-25. In any event, plaintiff admits that he did not say anything to defendant while he was in the Dining Hall. Id. at 22:1-2.

#### b. Bathroom Use

While handcuffed, plaintiff asked a male officer to use the bathroom. Pl.'s Dep. at 22:7—24:15. The officer denied plaintiff's request and told him to sit down because the search was going to be concluded soon. Id. Plaintiff then asked a second time, and this request was also denied. Id. Plaintiff ultimately urinated and defecated in his shorts, and it was another hour to hour and a half before he was permitted to return to his cell. Id.

### 3. Post-Search Activity

Defendant denies having escorted any inmate, including plaintiff, after the search, but even if she did, plaintiff did not ask defendant to remove his handcuffs. See Pl.'s Dep. at 27:25—28:7. Plaintiff claims that defendant did escort him back to his cell, but he admits that he did not ask her to remove the handcuffs. He did, however, tell her that it hurt to walk because of his back and asked to be taken to a doctor; defendant responded, "No, I can't take you to the doctor." Pl.'s Dep. at 27:25—28:7. Defendant ultimately removed the handcuffs.

////

| | |
|---|---|
| 1 | Plaintiff did not request a medical request form from defendant at any point after the |
| 2 | search was completed, though he did ask a nurse and other staff members who told him that a slip |
| 3 | was unavailable. SUF ¶¶ 34-35. One week after the incident, plaintiff had a pre-scheduled |
| 4 | appointment with his doctor. Id. ¶ 38. During this visit, plaintiff received aspirin though he was |
| 5 | no longer showing any signs of, or experiencing any, discomfort. Plaintiff's pain and discomfort |
| 6 | ended entirely two or three days after the search. Id. ¶ 39. |

### III. Legal Standards

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

5

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391

U.S. at 289).

**IV. Discussion**

    **A. Eighth Amendment Excessive Force**

The Eighth Amendment prohibits cruel and unusual punishment. "[T]he unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitely v. Albers, 475 U.S. 312, 319 (1986).

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)) (internal quotations omitted).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9) (quotation marks omitted). In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (quotation marks and citations omitted). While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it. Hudson, 503 U.S. at 7. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency. Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9) (quotation marks omitted). Thus, it is the use of force rather than the resulting injury which ultimately counts. Id. at 1178. Mere negligence is not actionable under § 1983 in the prison context. Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

In general, in cases where tight handcuffing was found to constitute excessive force, the plaintiff was in visible pain, repeatedly asked the defendant to remove or loosen the handcuffs, had pre-existing injuries known to the defendant, or alleged other forms of abusive conduct by the defendant. Shaw v. City of Redondo Beach, 2005 WL 6117549, at * 7 (C.D. Cal. 2005) ("In those tight handcuffing cases in which courts have found excessive force, the arrestee was either in visible pain, complained of pain, alerted the officer to pre-existing injuries, sustained more severe

injuries, was in handcuffs for a longer period of time, asked to have the handcuffs loosened or released, and/or alleged other forms of abusive conduct in conjunction with the tight handcuffing.").

Defendant has presented evidence that she did not place the handcuffs on plaintiff, was unaware that plaintiff's handcuffs were causing him discomfort, and did not know that he had to use the restroom while in the Dining Hall. In order to defeat defendant's motion, plaintiff was required to submit some evidence showing that defendant was aware that the handcuffs were so tight that they were causing plaintiff pain and then did nothing to alleviate that pain and/or that the handcuffs prevented plaintiff from using the restroom, resulting in him defiling himself. Plaintiff has not met his burden as to either.[1] Even construing the facts in plaintiff's favor, the evidence establishes that plaintiff did not ask defendant to use the restroom, and he did not complain to her of pain related to the handcuffs or ask her to remove the handcuffs. Though plaintiff complained to defendant of back pain and asked to see the doctor, this request occurred on the escort back to his cell, immediately before defendant removed the handcuffs. Moreover, there is no evidence that plaintiff suffered any more than a temporary physical injury as a result of the handcuffing. On these facts, the Court finds that no reasonable trier of fact would conclude that defendant violated plaintiff's Eighth Amendment right to be free from excessive force.

**B. Eighth Amendment Conditions of Confinement**

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)). While basic human needs must be met, when a genuine emergency exists prison officials may be more restrictive than usual and certain services may be temporarily suspended. See Hoptowit v. Ray, 682 F.2d 1237, 1259 (9th Cir. 1982). Severe conditions of confinement resulting from an emergency lockdown do not amount to an Eighth Amendment violation where

---

[1] Plaintiff's 20-page opposition is devoid of legal argument. Instead, it consists of a 4-page response to defendant's Statement of Undisputed Facts, select portions of his deposition testimony, and 8 "Program Status Reports" concerning the August 2012 suspended / modified program at HDSP.

8

the restrictions are tailored to the level of emergency. See Hayward, 629 F.2d 599, 603 (9th Cir. 2011) (no due process or Eighth Amendment violation from five-month emergency lockdown where restrictions gradually eased as emergency permitted); see also Bruscino v. Carlson, 854 F.2d 162, 164-66 (7th Cir. 1988) (extraordinary security measures of permanent lockdown such as limitation of time spent outside cells, denial of opportunities to socialize, handcuffing, shackling, spread-eagling and rectal searches reasonable measures in view of history of violence at prison).

Defendant has presented evidence showing that Facilities A-D were placed on a temporary/modified program in August and September 2012 due to a period of heightened violence at HDSP, threats against staff, and missing metal that could be used as a weapon against staff members. Certain precautions were taken during the search of Building A-2, including handcuffing inmates during the entire course of the search, which lasted approximately four hours. This handcuffing was not intended as punishment but instead for institutional security.

Plaintiff disputes the purpose of the September 4, 2012, search, arguing that it was punitive in nature. Plaintiff argument, however, is speculative and unsupported by the evidence. Plaintiff also argues that since only some inmates were involved in the high prison violence and threats against staff at HDSP, his constitutional rights were violated when he and others inmates unaffiliated with the violence were handcuffed for four hours during the search for contraband and denied the ability to use the restroom uncuffed.

Again construing the facts in plaintiff's favor, the Court concludes that defendant is entitled to judgment as a matter of law because being handcuffed for four hours and unable to access the restroom during that period does not give rise to a deprivation sufficiently serious to support an Eighth Amendment claim, particularly considering the institutional threat faced by HDSP staff, which plaintiff does not dispute. See Kanvick v. Nevada, 2010 WL 2162324, at *5-6 (D. Nev. Apr. 27, 2010) (noting "that a temporary deprivation of access to toilets, in the absence of physical harm or a serious risk of contamination, does not rise to the level of an Eighth Amendment violation" and holding that deprivation of access to restrooms lasting up to two hours was not sufficient to support an Eighth Amendment claim); see also Hernandez v. Battaglia, 673

F. Supp. 2d 673, 676-78 (N.D. Ill. 2009) (finding that deprivations were not sufficiently serious where prisoners were detained in a prison yard while handcuffed without access to water, food, or toilets in 80 to 85 degree temperatures for up to five hours during a search of living quarters); Curiel v. Stigler, 2008 WL 904894, at *4-6 (N.D. Ill. Mar. 31, 2008) (same). Cf. Young v. Martin, 801 F.3d 172 (3d Cir. Sept. 8, 2015) (reversing grant of summary judgment for defendants on plaintiff's claim that his Eighth Amendment rights were violated when he was shackled naked to a chair for 14 hours); Doss v. Rim, 2011 WL 2604806, at *8 (C.D. Cal. May 20, 2011) (finding that a deprivation of access to toilet facilities for over eleven hours was sufficiently serious).

Based on the foregoing, the undersigned will recommend that defendant's motion for summary judgment be granted. In light of this recommendation, the Court declines to reach defendant's alternative arguments that plaintiff failed to exhaust his administrative remedies and that defendant is entitled to qualified immunity.

**V.  Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 38) be GRANTED; and
2. This action be dismissed.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:  October 18, 2016

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;pope1896.msj